IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| M.E. FIELDS, INC. d/b/a FIELDS INFINITI and YAMPA VALLEY ENTERPRISES, INC. d/b/a FIELDS INFINITI OF LAKE COUNTY, | ) ) ) ) ) | No. 11 C 4408 |
| Plaintiffs, | ) ) | Judge Ronald Guzman |
| v. | ) ) | |
| NISSAN NORTH AMERICA INC., INFINITI DIVISION, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs M.E. Fields, Inc. and Yampa Valley Enterprises, Inc. (collectively "Fields") have sued defendant Nissan North America, Infiniti Division ("Infiniti") for alleged violations of the Illinois Motor Vehicle Franchise Act ("the Act"), 815 Ill. Comp. Stat. 710/6. The case is before the Court on defendant's motion to dismiss or stay. For the reasons set forth below, the Court grants in part and denies in part the motion.

**Facts**

On November 3, 2009, Fields filed an action with the Illinois Motor Vehicle Board claiming that Infiniti's addition of a warranty supplemental cost recovery charge ("additional charge") to the invoice for every new car it sells to Fields violates section 6 of the Act. (Compl. ¶¶ 17-19.) On November 15, 2010, a hearing officer issued a proposed decision finding that Infiniti's practice "violates the spirit and principle of Section 6." (Compl., Ex. A, 11/15/10 Proposed Decision 2.)

On February 10, 2011, the Board issued a final order adopting the proposed decision and ordering Infiniti to pay Board expenses. (*Id.*, Ex. B, Final Order 1.)

Subsequently, Infiniti and Fields each filed suit in state court; Infiniti sought judicial review of the Board's order, and Fields sought damages for the statutory violations found by the Board. (Compl. 1-2.) Infiniti removed plaintiffs' suit to this Court and now asks the Court to dismiss it as premature or barred by res judicata or stay it pending resolution of Infiniti's state suit for judicial review.

## Discussion

Infiniti contends that this suit is not ripe because the Board's order cannot be given preclusive effect until Infiniti's appeal is decided. Infiniti is partially correct. Under Illinois law, "a state agency's determination must be final and unappealed" before it can be given preclusive effect. *Grobe v. Hollywood Casino-Aurora, Inc.*, 759 N.E.2d 154, 162 (Ill. App. Ct. 2001); *see Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) ("[F]ederal courts must give [a state] agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts."). Consequently, because it is being appealed, the Board's order does not preclude Infiniti from contesting its liability in this suit.

That does not mean, however, that the suit is not ripe. A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted). Plaintiff filed this suit pursuant to section 13 of the Act, which authorizes "[a]ny franchisee or motor vehicle dealer who suffers any loss . . . as a result of the use or employment by a manufacturer, wholesaler, [or]

2

distributor . . . of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by this Act . . . [to] bring an action for damages and equitable relief." 815 Ill. Comp. Stat. 710/13. The basis for plaintiff's suit, Infiniti's imposition of the additional charge, has already occurred. Thus, though the state court's decision on Infiniti's appeal may moot this case, it is currently ripe for adjudication.

Infiniti fares no better with its paradoxical argument that the suit is barred by res judicata. That doctrine bars federal court litigation of claims that were or could have been raised in a prior state court suit that involved the same parties and causes of action and resulted in a final judgment on the merits. *Lolling v. Patterson*, 966 F.2d 230, 235 (7th Cir. 1992). As noted above, the Board's order is not final for the purposes of res judicata. Moreover, even if it were, the order would not preclude Fields from asserting its damages claim because such claims are outside of the Board's jurisdiction. *See* 815 Ill. Comp. Stat. 710/12, 13. Thus res judicata is not a bar to this suit.

Even if this suit is otherwise actionable, Infiniti urges the Court to abstain from exercising jurisdiction over it in accordance with the *Colorado River* and *Pullman* abstention doctrines. Abstention is appropriate under *Colorado River* if the state and federal actions are parallel, exceptional circumstances warrant a stay and a stay would promote "wise judicial administration." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). Generally, two suits are parallel when they "involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006). Even if they are not entirely symmetrical, cases are parallel if there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Constr. v. Brant Constr.*, 780 F.2d 691, 695 (7th Cir. 1985).

3

The two suits here involve the same parties, implicate the same facts and revolve around the same legal issue, *i.e.*, whether Infiniti's imposition of the additional charge violates the Act. *See* 735 Ill. Comp. Stat. 5/3-110 (stating that administrative review "shall extend to all questions of law and fact presented by the entire record before the court"). But, because damages are not available in the state suit, the relief plaintiff seeks is different.

That is a distinction without a difference, Infiniti argues, citing *Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004), as support. The *Clark* court held that a federal suit in which plaintiff sought damages and equitable relief was parallel to a state suit in which plaintiff sought only damages because:

> [T]he liability issues (which are the central legal issues) remain the same in both cases. Moreover, the relief requested in [the federal] case is substantially similar to that requested in the [state] action. Although Clark states in her complaint that "[p]laintiff on behalf of Sears has no adequate remedy at law," both complaints request jury trials and seek to recover damages from the individual defendants. . . . Clark's vague request for equitable relief does not convince us that both lawsuits do not in the end seek substantially the same relief, *i.e.*, damages.

*Id.* at 687. As in *Clark*, the central issue in these cases is the same. Unlike in *Clark*, however, if the state court resolves the issue in Field's favor, its determination will not dispose of this suit. Rather, unless Infiniti agrees with Fields' demand, the amount of damages to which Fields is entitled will have to be determined here. Because a contested damages claim may well remain in this suit after the state case is decided, the two are not parallel within the meaning of *Colorado River*.

Alternatively, Infiniti asks the Court to abstain pursuant to the *Pullman* doctrine, which applies when "(1) there is a substantial uncertainty as to the meaning of the state law and (2) there exists a reasonable probability that the state court's clarification of state law might obviate the need

4

for a federal constitutional ruling." *Int'l Coll. of Surgeons v. City of Chi.*, 153 F.3d 356, 365 (7th Cir. 1998). The state law at issue here is section 6 of the Act, which provides in relevant part:

> (a) Every manufacturer, distributor, wholesaler, distributor branch or division, factory branch or division, or wholesale branch or division shall properly fulfill any warranty agreement and adequately and fairly compensate each of its motor vehicle dealers for labor and parts.
>
> (b) In no event shall such compensation fail to include reasonable compensation for diagnostic work, as well as repair service, labor, and parts. Time allowances for the diagnosis and performance of warranty work and service shall be reasonable and adequate for the work to be performed. In the determination of what constitutes reasonable compensation under this Section, the principal factor to be given consideration shall be the prevailing wage rates being paid by the dealer in the relevant market area in which the motor vehicle dealer is doing business, and in no event shall such compensation of a motor vehicle dealer for warranty service be less than the rates charged by such dealer for like service to retail customers for nonwarranty service and repairs. The franchiser shall reimburse the franchisee for any parts provided in satisfaction of a warranty at the prevailing retail price charged by that dealer for the same parts when not provided in satisfaction of a warranty; provided that such motor vehicle franchisee's prevailing retail price is not unreasonable when compared with that of the holders of motor vehicle franchises from the same motor vehicle franchiser for identical merchandise in the geographic area in which the motor vehicle franchisee is engaged in business. . . .
>
> . . . .
>
> (g)(1) Any motor vehicle franchiser and at least a majority of its Illinois franchisees of the same line make may agree in an express written contract citing this Section upon a uniform warranty reimbursement policy used by contracting franchisees to perform warranty repairs. The policy shall only involve either reimbursement for parts used in warranty repairs or the use of a Uniform Time Standards Manual, or both. Reimbursement for parts under the agreement shall be used instead of the franchisees' "prevailing retail price charged by that dealer for the same parts" as defined in this Section to calculate compensation due from the franchiser for parts used in warranty repairs. This Section does not authorize a franchiser and its Illinois franchisees to establish a uniform hourly labor reimbursement.
>
> . . . .
>
> (2) A franchiser that enters into an agreement with its franchisees pursuant to paragraph (1) of this subsection (g) may seek to recover its costs from only those

> franchisees that are receiving their "prevailing retail price charged by that dealer" under subsections (a) through (f) of this Section . . . .
>
> . . . .
>
> (4) If a franchiser and its franchisees do not enter into an agreement pursuant to paragraph (1) of this subsection (g) . . . , this subsection (g) shall have no effect whatsoever.

815 Ill. Comp. Stat. 710/6.

Infiniti does not have a uniform warranty reimbursement agreement and thus, subsections (a) and (b) govern. *Id.* Because neither provision explicitly states that a franchiser cannot recoup from dealers the cost of having to pay them the statutorily-mandated rates for warranty parts, Infiniti asserts that the additional charge is lawful. (*See* Pl.'s Resp. Def.'s Mot. Dismiss Stay, Ex. 1, Infiniti's Mot. Dismiss Motor Vehicle Bd. Protest 2-6.) Fields argues, and the Board held, that the additional charge violates section 6(b) because it defeats Infiniti's statutory obligation to reimburse Fields for warranty parts "at [its] prevailing retail price." 815 Ill. Comp. Stat. 710/6(b). Infiniti argues in its appeal and intends to argue in this suit that the interpretation of the Act advanced by Fields and adopted by the Board violates the contract, commerce, due process and equal protection clauses of the U.S. Constitution. Because the proper interpretation of section 6 is an issue of first impression in Illinois, and its resolution may moot Infiniti's constitutional claims, *Pullman* abstention is appropriate.

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to dismiss or stay [9] and stays the proceedings in this case until the state court rules on defendant's appeal of the Board's order. The parties are ordered to report the result of the appeal to this Court within twenty-one days after the decision issues.

**SO ORDERED.**                                                ENTER:   December 8, 2011

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**